IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBEMARLE CORPORATION, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 4:12-cv-3232 |
| § | | |
| UNITED STEEL, PAPER AND § | | |
| FORESTRY, RUBBER, § | | |
| MANUFACTURING, ENERGY, § | | |
| ALLIED INDUSTRIAL AND § | | |
| SERVICE WORKERS § | | |
| INTERNATIONAL UNION, AFL-CIO, § | | |
| ON BEHALF OF LOCAL 6000, § | | |
|     Defendant. § | | |

**MEMORANDUM AND ORDER**

This case is before the Court on Plaintiff Albemarle Corporation's ("Albemarle") Motion for Discovery [Doc. # 12], Motion to Strike Defendant's "Supplemental Response" to Motion for Discovery and Incorporated Brief in Support ("Motion to Strike") [Doc. # 18], and Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment") [Docs. # 21 and 22]. Also pending is the Motion for Summary Judgment filed by Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, on behalf of Local 6000 ("Local 6000" or "the Union") ("Defendant's Motion for Summary Judgment") [Docs. # 14 and 15]. The motions all are ripe for

decision.[1] Having reviewed the parties' briefing, the applicable legal authorities, and the pertinent matters of record, the Court **grants** Defendant's Motion for Summary Judgment, **denies** Plaintiff's Motion for Summary Judgment, and **denies as moot** Plaintiff's Motion for Discovery and Motion to Strike. This case is **dismissed with prejudice** and the matter is referred to an arbitrator for further proceedings.

## I. BACKGROUND

Albemarle, a Virginia corporation which manufactures specialty chemicals, operates a chemical plant in Pasadena, Texas (the "Plant"). Decl. of Hannah Stephens ("Stephens Decl.") [Exh. A to Doc. # 21-1], ¶ 3. On May 1, 2011, Albemarle and Local 6000, which represents Plant employees hired or assigned to do production, maintenance, and laboratory work, entered into a Collective Bargaining Agreement ("CBA") covering wages, hours, and working conditions. *Id.*, ¶¶ 2-5.

The CBA provides a mechanism by which the parties to the agreement can process claims by the Union or employees against the Company. Any claim brought by the Union can be submitted to an internal company "grievance procedure." This

---

[1] Defendant filed a Response to the Motion for Discovery [Doc. # 13], to which Plaintiff filed a Reply [Doc. # 16] and to which Defendant filed a Supplemental Response [Doc. # 17]. Defendant filed a Response to Plaintiff's Motion for Summary Judgment [Doc. # 24], to which Plaintiff filed a Reply [Doc. # 25]. Plaintiff filed a Response to Defendant's Motion for Summary Judgment [Doc. # 23], as well as a Supplemental Brief Regarding Cross-Motions for Summary Judgment [Doc. # 26], to which Defendant filed a Response [Doc. # 27]. No response was filed to Plaintiff's Motion to Strike [Doc. # 18].

procedure involves three steps of review by an Albemarle representative. CBA [Exh. A-1 to Doc. # 14-1], Art. V, § 4.

On July 13, 2009, Local 6000 filed Grievance No. 09-17 with Albemarle, contending that Albemarle's hiring of contractors to work in the Plant's laboratory violated various provisions of the CBA. Grievance No. 09-17 Documents [Exh. A-2 to Doc. # 14-1], at 1; Aff. of Debbie McDonald ("McDonald Aff.") [Exh. A to Doc. # 14-1], at 2. The crux of Local 6000's argument was that the laboratory positions traditionally belonged to union employees, some of whom wanted to return to these positions. McDonald Aff., at 2. Local 6000 alleged that this decision violated, among other things, Article XIX, Section 18 of the CBA, which states:

> It is understood that work peculiar to a job shall be done by employees regularly assigned to the job. In addition, work customarily performed by employees within this bargaining unit may not be reassigned outside the bargaining unit.

CBA [Exh. A-1 to Doc. # 14-1], Art. XIX, § 18. The Union pursued Grievance No. 09-17 through Albemarle's three-step procedure, and that grievance was denied at each step. *See* Grievance No. 09-17 Documents [Exh. A-2 to Doc. # 14-1], at 2-4.

As a result of the denial at Step Three of the grievance procedure, the Union certified Grievance No. 09-17 for arbitration. *Id.* at 4. Albemarle rejected the claim to arbitrate and contended that the grievance was not arbitrable under the CBA. *Id.* at 5. Rather than attempt to compel arbitration of Grievance No. 09-17 in court, Local

6000 filed an unfair labor practice ("ULP") charge with the National Labor Relations Board ("NLRB"). NLRB Unfair Practice Charge Documents [Exh. A-3 to Doc. # 14-1], at 2. On March 25, 2010, the NLRB denied the charge. *See id.* at 3-4.

Meanwhile, on December 14, 2009, Local 6000 filed Grievance No. 09-21 with Albemarle, charging that the Company had violated the CBA in its refusal to arbitrate Grievance No. 09-17. Grievance No. 09-21 Documents [Exh. A-4 to Doc. # 14-1], at 1. Grievance No. 09-21 was denied at both Step One and Step Two of the three-step process. *See id.* at 2-3. Albemarle, at both steps, asserted that Grievance No. 09-17 was a "complaint," and not a "grievance," as the terms are used in the CBA, and thus the matter was not subject to arbitration. *See id.* Local 6000 later withdrew Grievance No. 09-21. McDonald Aff., at 3.

On May 16, 2012, Local 6000 filed Grievance No. 12-05 "for the violation of the Current [*sic*] Bargaining Agreement, by the Albemarle Corporation, in hiring contract labor in the lab," citing to a violation, among other provisions, of Article XX of the CBA. Grievance No. 12-05 Documents [Exh. A-5 to Doc. # 14-1], at 1. Article XX of the CBA states:

> The COMPANY will not contract work normally done by employees of this bargaining unit when the contracting and performance of such work would require employees in the bargaining unit to be laid off or reduced in rate of pay, or would prevent reemployment of employees laid off who have recall rights, provided such employees would be qualified to perform the work in question

and provided the COMPANY had the necessary facilities to perform such work.

CBA [Exh. A-1 to Doc. # 14-1], Art. XX. The Union unsuccessfully pursued Grievance No. 12-05 through the company's three-step review. Grievance No. 12-05 [Exh. A-5 to Doc. # 14-1], at 2-4. In denying the grievance at Step Three, Albemarle's representative asserted that, "Per Article XX, no members of the bargaining unit have been laid off, received a reduction in pay, nor were there any bargaining unit employees on layoff who were prevented from returning to work due to the subcontracting of work by the Company." *Id.* at 4. After the Step Three denial, Local 6000 certified Grievance No. 12-05 for arbitration. *See id.*

On October 30, 2012, Albemarle filed this suit in which it seeks a declaratory judgment that "the Union may not compel Albemarle to arbitrate Statement of Grievance No. 12-05." Complaint [Doc. # 1], ¶ 27. Local 6000 has answered the Complaint and has asserted a counterclaim seeking to compel the company to arbitrate Grievance No. 12-05 [Doc. # 7]. Through cross-motions for summary judgment, the parties now seek the Court's ruling on these matters.

## II.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden

at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material

fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343

F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

## III. ANALYSIS

### A. Arbitrability

In connection with their cross-motions for summary judgment, the parties agree on all essential facts and issues in this case, save two: (a) whether Albemarle violated the CBA in contracting out laboratory positions; and (b) whether that issue must be arbitrated. Both of these issues are questions of law, not fact. Because no material facts are in dispute, the Court rules on the question of arbitrability.

"In determining whether the grievances at issue are arbitrable, [a court] must examine the scope of the parties' agreement, as reflected in the arbitration clause."

*Paper, Allied-Indus. Chem. and Energy Workers Int'l Union, Local 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272, 275 (5th Cir. 2011) ("*PACE*"). This Court is obligated to enforce the agreement between Albemarle and Local 6000 "according to its terms." *Id.* at 276 (internal citations omitted). Where, as here, parties have limited the scope of arbitrable issues, a court must ensure that only those agreed upon issues are compelled to arbitration. *See id.*[2]

It is decidedly the province of this Court to determine whether a dispute is subject to arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) ("It was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration."). There are several long-standing principles to guide this Court's analysis. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Second, whether or not a claim should be arbitrated is for the court, and not the arbitrator, to decide. *Id.* at 649. Third, in addressing a motion to compel arbitration, a court should not rule on the merits of the underlying case. *Id.* at 649-50. Fourth, and finally, all doubts as to

---

[2] Neither party disputes the existence of a valid contract or arbitration agreement. The only dispute concerns the *applicability* of the arbitration provision in this case, a matter of pure contract interpretation. Thus, the Court does not consider here the validity of the arbitration agreement itself.

arbitrability "should be resolved in favor of coverage"—that is, our interpretation of the arbitration clause should be rendered with a presumption of arbitrability. *Id.* at 650; *see also Int'l Bhd. of Elec. Workers, Local Union No. 716, AFL-CIO v. Albemarle Corp.*, No. H-10-5063, 2011 WL 5450902, at *2-3 (S.D. Tex. Nov. 8, 2011), *aff'd*, 478 F. App'x 861 (5th Cir. 2012) (summarizing *AT & T* principles).

The CBA between Albemarle and Local 6000 distinguishes between "grievances" and "complaints." "Grievances" encompass "any dispute between the COMPANY and the UNION involving the proper application of, interpretation of, or compliance with" the CBA. CBA [Exh. A-1 to Doc. # 14-1], Art. V, § 2. "Complaints" do "not involve a violation of the bargaining agreement." *Id.* Both grievances and complaints are processed pursuant to a similar three-step internal procedure. *Id.,* Art. V, § 3. Grievances, however, may proceed to arbitration after the internal three-step procedure has been exhausted, *see id.*, Art. V, § 8, whereas complaints "shall not be subject to arbitration," *id.*, Art. V, § 2. If a claim is arbitrated, "[t]he sole function of the arbitrator shall be to determine whether the COMPANY or the UNION is correct with reference to the proper application and interpretation of, or compliance with, this agreement [*i.e.*, the CBA] . . ." *Id.*, Art. V, § 8.

Not all claims styled as "grievances" are necessarily subject to arbitration under the CBA.  As noted, both grievances and complaints are processed through the same internal procedure.  Moreover, the CBA prohibits the filing of a complaint "which falsely cites a contract violation merely for the purpose of elevating the complaint to grievance status."  *Id.*, Art. V, § 2.

Albemarle contends that Grievance No. 12-05 is a "complaint" and that Local 6000 "falsely cites a contract violation" for the purposes of impacting the arbitrability of the claim.  Plaintiff's Brief [Doc. # 22], at 6.  According to Albemarle, no contract violation occurred because the company had the right under the CBA to contract out the positions.  *Id.* at 6-7.  Albemarle contends that because it had the right to contract out these positions, the Union's attempt to assert a claim under the CBA is "falsely citing" to a CBA provision in order to obtain grievance status.  *Id.* at 4 ("As Local 6000 has *no* evidence with which to dispute any fact which could limit Albemarle's retained right to contract out under Article XX of the CBA, Local 6000's Grievance No. 12-05 constitutes a non-arbitrable complaint, such that summary judgment in Albemarle's favor should be granted.") (emphasis in original).

Albemarle's arguments are unavailing.  It is not the Court's role to decide the merits of the Union's underlying claim.[3]  *AT & T Techs.*, 475 U.S. at 649-50.  Local

---

[3] The Court recognizes that the Fifth Circuit has permitted courts, when necessary, to touch on the merits of a dispute to the extent that it is needed to construe an arbitration

6000's claim turns on the "application of, interpretation of, or compliance with" the CBA—namely, whether Albemarle's hiring non-Union workers in laboratory positions violated Article XX. Whether Grievance No. 12-05 alleges a colorable violation of the CBA or whether Albemarle's actions were otherwise permissible "can only be determined by interpreting and applying the CBA," and "[u]nder the CBA these questions are for the arbitrator." *Int'l Bhd. of Elec. Workers, Local Union No. 716, AFL-CIO v. Albemarle Corp.*, No. H-10-5063, 2011 WL 5450902, at *4 (S.D. Tex. Nov. 8, 2011), *aff'd*, 478 F. App'x 861 (5th Cir. 2012); *see also id.* ("But whether the Union is improperly using Grievance 10-02 turns on the meaning of Article XI(A)(4); and interpreting Article XI(A)(4) is for the arbitrator, not the court."). The CBA at issue here contains the same "grievance" and "complaint" definitions as the CBA in *International Brotherhood*.[4] As the Honorable Sim Lake noted in that case, the CBA "defines grievance liberally." *Int'l Bhd.,* 2011 WL 5450902, at *3.

In support of its interpretation of Grievance No. 12-05, Albemarle cites the Fifth Circuit's decision in *Paper, Allied-Industrial Chemical and Energy Workers*

---

provision. *See PACE*, 657 F.3d at 277 & n.14. However, the arbitration provision at issue here is clear, and no merits analysis is necessary.

[4] *Compare* CBA [Exh. A-1 to Doc. # 14-1], Art. V, § 2, *with*, *Int'l Bhd. of Elec. Workers, Local Union No. 716, AFL-CIO v. Albemarle Corp.*, No. H-10-5063, CBA [Ex. A-1 to Doc. # 16-1], Art. VI(B).

*International Union, Local 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272 (5th Cir. 2011) ("*PACE*"), for the proposition that "the Court in the instant case must determine whether Local 6000 is urging a good faith violation of the CBA," which necessarily entails an assessment of the merits of Local 6000's claim. Plaintiff's Brief [Doc. # 22], at 8-10. The cited aspect of the Fifth Circuit's decision in *PACE* is inapposite, as the Court of Appeals, in affirming the District Court, recognized in *International Brotherhood*. *See Int'l Bhd*, 478 F. App'x 861, 863 (5th Cir. 2012), *aff'g*, 2011 WL 5450902 (S.D. Tex. Nov. 8, 2011). The CBA in *PACE*, as distinguished from the CBA here, included "[t]he element of 'good faith' . . . in the arbitration clause." *PACE*, 657 F.3d at 275. That element served as a limitation on the types of claims the parties had agreed to arbitrate, and the applicability of the limitation was for the court to decide. *Id.* at 275-76; *Int'l Bhd.*, 478 F. App'x at 863. No such limitation exists in the CBA at hand. Thus, the question of whether Local 6000 has "urged a good faith claim" or whether its prior conduct "demonstrate[s] Local 6000's failure to raise a good faith dispute," Plaintiff's Brief [Doc. # 22], at 11, is not presented.

Albemarle concedes that the parties' CBA does not include the "good faith" language. Instead, Albemarle seeks to equate the "falsely cites" language in Article V, § 2 of the CBA with the "good faith" language in the *PACE* CBA. Plaintiff's Brief [Doc. # 22], at 8-10. This Court, like the Fifth Circuit and Judge Lake in *International*

*Brotherhood*, rejects this contention and concludes that "good faith" and "falsely cites" are not equivalent terms. *See Int'l Bhd.*, 478 F. App'x at 863 ("Albemarle claims that [*PACE*] requires this court to look beyond the grievance to ascertain the actual issues the Union hopes to raise in its arbitration. *PACE* is not so broad in scope. *PACE* involved a CBA that limited arbitration to 'good faith claim[s] by one party that the other party has violated a written provision of the [CBA].'"); *Int'l Bhd.*, 2011 WL 5450902, at *4 n.21 ("This liberal definition of 'grievance' stands in contrast to the more restrictive definition of 'grievance' at issue in a recent Fifth Circuit decision finding that a grievance was not arbitrable because it failed the 'good faith' requirement for arbitrable grievances in that CBA."). In the case at bar, the arbitrator must decide whether Local 6000 is "falsely citing" Article XX as a hook to obtain "grievance" status. This determination is part and parcel of the merits of Albemarle's contention of non-arbitrability. Unlike the "good faith" limitation in the CBA at issue in *PACE,* the "falsely cites" evaluation is not for this Court. *Accord, Int'l Bhd.*, 478 F. App'x at 863 ("Further, the question of whether the Union is falsely citing a contract violation merely for the purpose of elevating the complaint to grievance status' is a question for the arbitrator under the terms of the CBA.").

Albemarle also urges this Court to focus on "Local 6000's prior, failed attempts to bring the issue of subcontracting to arbitration" as a sign of the Union's "bad faith"

in urging arbitration in this case. Plaintiff's Response [Doc. # 23], at 14. As noted, the concept of "bad faith" is not a consideration under the parties' CBA. It is for the arbitrator to decide whether Local 6000's prior unsuccessful attempts to compel arbitration concerning the issue of subcontracting are relevant to the merits of the Union's current claim. Issues relating to earlier proceedings (such as Grievances Nos. 09-17 and 09-21) are beyond the purview of this Court.

### B. Attorneys' Fees

In its Motion for Summary Judgment, Local 6000 makes a request for attorney's fees, *see* Defendant's Brief [Doc. # 15], at 22-23, which Albemarle has opposed, *see* Plaintiff's Response [Doc. # 23], at 16 n.15. While 29 U.S.C. § 185 does not itself provide for an award of attorney's fees, a court may, in its discretion, award attorney's fees when "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). Local 6000 has not presented any evidence of Albemarle's bad faith. Accordingly, the Court, in its discretion, denies Defendant's request for attorney's fees.

### IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docs. # 21 and 22] is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion for Discovery [Doc. # 12] and Motion to Strike Defendant's "Supplemental Response" to Motion for Discovery and Incorporated Brief in Support [Doc. # 18] are **DENIED as moot**. It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docs. # 14 and 15] is **GRANTED**, except as to any request for attorney's fees. The case is **DISMISSED with prejudice**.

A final judgment will be filed separately.

SIGNED at Houston, Texas, this **8th** day of **October, 2013.**

_____
Nancy F. Atlas
United States District Judge